David E. De Lorenzi [DED-2692]
Michael Cukor [MC-0753]
Sheila F. McShane [SFM-6051]
Robert M. Fuhrer (*pro hac vice* application pending)
**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
973-596-4500
Attorneys for Plaintiff
Newspring Industrial Corporation

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NEWSPRING INDUSTRIAL CORPORATION,

Plaintiff,

v.

GROUP W INC., THE WALCO
ORGANIZATION, INC., LAWRENCE E.
WALTER and DANIEL D. ZABO,

Defendants.

CIVIL ACTION NO.: 06-0343

(Hon. JAG)

**COMPLAINT**
1. Breach of Contract
2. False Advertising
3. Patent Infringement

Plaintiff NEWSPRING INDUSTRIAL CORPORATION ("Newspring"), by its undersigned attorneys, for its Complaint against defendants alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction in this matter pursuant, *inter alia*, to 28 U.S.C. §§ 1331 and 1338.

2.  Under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), venue is appropriate in this district, as New Jersey is a place where defendants are subject to personal jurisdiction.

3.  Upon information and belief, defendants have committed acts in this district, including, but not limited to: (a) entering into a contract with the New Jersey corporation, Newspring, where the terms of the contract are governed by New Jersey law; (b) having

representatives of defendants enter New Jersey for business purposes; and (c) having sales teams enter New Jersey for Newspring product sales training.

## THE PARTIES

4.      Newspring is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 35 O'Brien Street, Kearny, New Jersey 07032. Newspring is a wholly-owned company of Pactiv Corporation, a publicly traded company (NYSE: PTV ) with its headquarters in Lake Forest, Illinois, a leading producer of specialty packaging products for the consumer and foodservice/food packaging markets.

5.      On information and belief, Defendant, Group W Inc. is an entity having a principal place of business at 1351 E. 171 Street, Cleveland, Ohio 44108 and is incorporated in the State of Ohio.

6.      On information and belief, Defendant The Walco Organization, Inc. is an entity having a principal place of business at 1351 E. 171 Street, Cleveland, Ohio 44108 and is incorporated in the State of Ohio.

7.      On information and belief, Lawrence E. Walter is an incorporator, controlling shareholder and controlling principal of Group W Inc. and Walco Organization, Inc.

8.      On information and belief, Daniel D. Zabo is a salesman acting on behalf of Group W Inc., having a place of business at 9056 South Irwin Ave., Pittsburgh, Pennsylvania 15237.

## NEWSPRING'S PATENTS

9.      On February 11, 1997, Jeffrey Chen applied to the U.S. Patent and Trademark Office ("PTO") for a design patent, application number 29/066,299. U.S. Patent No. D415420 (the "'420 patent") issued on October 19, 1999. A copy of the '420 patent is attached as Exhibit A hereto.

10.      Jeffrey Chen assigned the '420 patent to Newspring.

11.      The '420 patent is a design patent claiming figures depicting a round container.

- 2 -

12.   On January 14, 2000, Jeffrey Chen applied to the PTO for a utility patent with application number 09/483,350.  On May 6, 2001, U.S. Patent No. 6,196,404 B1 (the "'404 patent") issued.  A copy of the '404 patent is attached as Exhibit B hereto.

13.   Jeffrey Chen assigned the '404 patent to Newspring.

14.   The '404 patent is a utility patent for features of a container seal with protrusions.

## DEFENDANTS' INFRINGING ACTIVITIES

15.   In 1999, Newspring and Group W Inc. entered into a Sales Representation Agreement ("Sales Agreement"), wherein Group W Inc. became the designated sales representative for certain Newspring products, including Newspring's VERSAtainer® product, which is covered by the '420 and '404 patents, for representation in the territories of Ohio, West Virginia and Western Pennsylvania.  A copy of the Sales Agreement is attached as Exhibit C hereto.

16.   Under ¶12.1 of the Sales Agreement, the laws of the State of New Jersey govern the Sales Agreement.

17.   Under ¶8.1 of the Sales Agreement, Group W Inc. agreed that it would not, "for a period of three (3) years hereafter, directly or indirectly, utilize any such confidential information, trade secrets, customer information, technical data or know-how relating to the Product and other products, processes, shipments, methods, equipment or other business practices."

18.   Under ¶8.1 of the Sales Agreement, confidential information includes "customer lists, marketing and sales strategies and long-term plans."

19.   In mid-1999, Defendants' principals and sales representatives traveled to Newspring's offices and manufacturing facilities located in New Jersey for extensive specialized training on features of and sales strategies for Newspring products ("the Newspring Training").

20.   While in New Jersey attending the Newspring Training, Defendants learned about, inter alia, Newspring's confidential information, customer information, and trade secrets.

- 3 -

#1047813 v3
060464-56318

Defendants also toured Newspring's New Jersey manufacturing areas, where trade secrets and confidential manufacturing know-how were disclosed.

21.    During the Newspring Training in New Jersey, Defendants received detailed training in the features of Newspring products. For example, Newspring personnel educated Defendants about Newspring's product strengths, technical differentiation with competing products, and sales and marketing strategies and techniques specific to Newspring's products.

22.    While in New Jersey attending the Newspring Training, Defendants also received instruction in general customer characteristics for particular market segments. Newspring also gave Defendants detailed pricing and margin information, and short-term and long-term sales plans, particularly for the sales territories that Defendants covered. All of this information consisted of, respectively, customer lists, marketing and sales strategies, long-term plans, confidential information, trade secrets, customer information, technical data or know-how.

23.    Upon Defendants' initiation of sales representation of Newspring products, Newspring continued to provide updated confidential information on Newspring's detailed pricing and margin information, customer characteristics and revised short-term and long-term sales plans. Newspring sales representatives worked with Defendants' staff to identify market customers, and thereby developed confidential customer lists for the Defendants' sales territory specific to plastic container sales. All of this information consisted of, respectively, customer lists, marketing and sales strategies, long-term plans, confidential information, trade secrets, customer information, technical data or know-how.

24.    On October 3, 2005, Newspring terminated the Sales Agreement in accordance with the termination provisions of the agreement.

25.    Upon information and belief, Defendants have recently been offering for sale and selling infringing containers ("the infringing goods").

- 4 -

26.    Upon information and belief, the infringing goods are round and rectangular plastic containers with transparent lids and opaque bases, having a triple seal formed between the lids and bases.

27.    Upon information and belief, Defendants have utilized customer and confidential information to market and sell infringing goods, in violation of ¶8.1 of the Sales Agreement.

28.    Upon information and belief, Defendants continue to falsely advertise themselves as a customer representative for Newspring in internet advertising.  A copy of a portion of the Group W Inc. website is attached as Exhibit D hereto.

## COUNT I-BREACH OF CONTRACT
### (AS TO ALL DEFENDANTS)

29.    Newspring repeats and realleges the allegations set forth in Paragraphs 1 through 28 of this Complaint, as if fully set forth herein.

30.    This cause of action arises under the laws of the State of New Jersey.

31.    This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

32.    Newspring and Defendants entered into a valid Sales Agreement whereby both parties performed under the terms of the Sales Agreement for several years, including but not limited to Defendants' acceptance of Newspring goods and payment of Newspring invoices.

33.    Defendants, acting individually and in concert with each other, have breached the Sales Agreement by certain acts including, but not limited to, their use of confidential and other information in violation of ¶8.1 of the Sales Agreement.

34.    Upon information and belief, Defendants' breach of its obligations under the Sales Agreement has caused damage to Newspring.  Newspring will continue to be damaged by Defendants' breach of obligations under the Sales Agreement, including without limitation monetary damages.

- 5 -

## COUNT II-FALSE ADVERTISING UNDER NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. 56:8-1 *et. seq.*) AND NEW JERSEY COMMON LAW
### (AS TO DEFENDANTS GROUP W INC., THE WALCO ORGANIZATION, INC. and LAWRENCE E. WALTER)

35.     Newspring repeats and realleges the allegations set forth in Paragraphs 1 through 34 of this Complaint, as if fully set forth herein.

36.     This cause of action arises under the New Jersey Consumer Fraud Act, codified at N.J.S.A. 56:8-1 - 56:8-20, and the common law of New Jersey.

37.     This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

38.     The Defendants, acting individually and in concert with each other, have engaged and continue to engage in advertising a misrepresentation of a material fact by knowingly continuing to advertise on their website that they represent and sell Newspring products, after Newspring has terminated such representation.

39.     Defendants falsely represent that they continue to represent and sell Newspring products to induce buyers to purchase their infringing products.

40.     Defendants' misrepresentation has caused Newspring to suffer an ascertainable loss. Newspring will continue to suffer an ascertainable loss if Defendants' actions continue.

41.     Newspring has suffered monetary damages due to Defendants' wrongful acts of false advertising, including without limitation sales unfairly lost and/or diverted to Defendants, all to the detriment of Newspring.

42.     Defendants' affirmative acts causing an ascertainable loss to Newspring violate the New Jersey Consumer Fraud Act, as codified in N.J.S.A. 56:8-2 and 56:8-19. Defendants' unlawful conduct also violates the common law of New Jersey.

#1047813 v3
060464-56318

## COUNT III-PATENT INFRINGEMENT
### (AS TO ALL DEFENDANTS)

43.     Newspring repeats and realleges the allegations set forth in Paragraphs 1 through 42 of this Complaint, as if fully set forth herein.

44.     Defendants, acting individually and in concert with each other, have marketed, sold and offered to sell products that infringe the '420 and '404 patents.

45.     Defendants' acts, whether individually or in concert with each other, have violated and continue to violate Newspring's rights under the patent laws of the United States.

46.     Newspring has notified the public of its rights under the '420 and '404 patents in accordance with 35 U.S.C. § 287.

47.     On information and belief, Defendants have infringed and continue to infringe the '420 and '404 patents knowingly and willfully, in violation of Newspring's rights under the patent laws of the United States.

48.     On information and belief, Defendants' knowing and willful acts of patent infringement are continuing and ongoing.

49.     On information and belief, Defendants will not cease committing the wrongful acts alleged in this Complaint without the intervention and injunction of this Court.

50.     Newspring has suffered monetary damages due to the wrongful acts of patent infringement by defendants, including sales unfairly lost and/or diverted to defendants, all to the detriment of Newspring.

**WHEREFORE**, Newspring respectfully requests and demands judgment as follows:

a.      That the Defendants and their agents, employees, assigns, and all persons acting under their control, be enjoined from directly or indirectly utilizing Newspring's confidential and other proprietary information, including without limitation its customer lists and information, marketing and sales strategies, long-term plans, trade

- 7 -

secrets, technical data or know-how relating to the VERSAtainer® product and other products, processes, shipments, methods, equipment or other business practices of Newspring;

b.    That the Defendants and their agents, employees, assigns, and all persons acting under their control, remove from their website and any other of their advertising any indication that they represent Newspring and that such false advertising be enjoined in the future;

c.    That the Defendants and their agents, employees, assigns, and all persons acting under their control, be enjoined from selling, attempting to sell, purchasing, promoting, storing, shipping, receiving, maintaining in their possession or otherwise exploiting in commerce the infringing products;

d.    That plaintiff Newspring be awarded its actual and consequential damages in an amount necessary to compensate Newspring for the damages caused by the Defendants' conduct in violation of law and equity, including breach of contract, false advertising and patent infringement committed by Defendants;

e.    That plaintiff Newspring be awarded the profits of the Defendants related to the infringing products, pursuant to 35 U.S.C. § 289;

f.    That plaintiff Newspring be awarded treble damages pursuant to 35 U.S.C. § 284;

g.    That the Court declare this an exceptional case and that plaintiff Newspring be awarded its costs and attorneys fees in this action pursuant to 35 U.S.C. § 285; and

h.    That Newspring be awarded such further relief as the Court shall find just and equitable.

- 8 -

**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
973-596-4500
Attorneys for Plaintiff,
Newspring Industrial Corporation

Dated:        January 23, 2006            By: _____
              Newark, New Jersey              **DAVID E. DE LORENZI (DED-2692)**
                                              **MICHAEL CUKOR (MC-0753)**
                                              **SHEILA F. McSHANE (SFM-6051)**
                                              **ROBERT M. FUHRER (*pro hac vice***
                                              **application pending)**

- 9 -

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff Newspring Industrial Corporation hereby demands a jury trial on all issues.

**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
973-596-4500
Attorneys for Plaintiff,
Newspring Industrial Corporation

Dated:     January 23, 2006            By: _____
           Newark, New Jersey              **DAVID E. DE LORENZI (DED-2692)**
                                           **MICHAEL CUKOR (MC-0753)**
                                           **SHEILA F. McSHANE (SFM-6051)**
                                           **ROBERT M. FUHRER (*pro hac vice***
                                           **application pending)**

- 10 -

#1047813 v3
060464-56318

Exhibit A



US00D415420S

# United States Patent [19]

## Chen

[11] **Patent Number:** **Des. 415,420**

[45] **Date of Patent:** ** **Oct. 19, 1999**

[54] **DOUBLE SEALED RIM STACKABLE CONTAINER**

[75] Inventor: **Jeffrey Chen**, Staten Island, N.Y.

[73] Assignee: **Newspring Industrial Corporation**, E. Newark, N.J.

[**] Term: **14 Years**

[21] Appl. No.: **29/066,299**

[22] Filed: **Feb. 11, 1997**

[51] **LOC (6) Cl.** ............................................. **09-07**

[52] **U.S. Cl.** ............................................. **D9/428; D7/629**

[58] **Field of Search** ........................... D9/428, 429, 431, D9/425, 424; 206/541, 508; 229/4.5, 406, 938; 220/4.21, 4.2, 4.23, 4.24, 4.25; D7/629; D28/82

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 335,085 | 4/1993 | Wacker | D9/428 X |
| D. 357,552 | 4/1995 | Carranza | D28/82 |
| D. 372,862 | 8/1996 | Flori | D9/428 |
| D. 373,954 | 9/1996 | Wolff | D9/429 |
| D. 375,261 | 11/1996 | Flori | D9/428 |
| D. 380,124 | 6/1997 | Kato et al. | D7/629 X |

| | | | |
|---|---|---|---|
| 3,720,365 | 3/1973 | Unger | 229/406 |
| 3,955,710 | 5/1976 | Commisso | 229/406 X |
| 5,220,989 | 6/1993 | Goulette | 229/406 X |

### OTHER PUBLICATIONS

Modern Packaging, p. 318, 1967.
Ultra Fresh Containers, p. 10, Mar. 1995.
Tenneco Packaging, p. 20, 1996.

*Primary Examiner*—Prabhakar Deshmukh
*Attorney, Agent, or Firm*—Gibbons, Del Deo, Dolan, Griffinger & Vecchione

[57] **CLAIM**

The ornamental design for a double sealed rim stackable container, as shown and described.

### DESCRIPTION

FIG. 1 is a perspective view of a double sealed rim stackable container according to the present invention including a container bottom and lid;
FIG. 2 is a side view of a container with lid thereof;
FIG. 3 is a top plan view of a lid thereof;
FIG. 4 is a top plan view of a container bottom thereof;
FIG. 5 is a side view of a lid thereof; and,
FIG. 6 is a side view of a container bottom thereof.

**1 Claim, 5 Drawing Sheets**



**U.S. Patent**          Oct. 19, 1999          Sheet 1 of 5          **Des. 415,420**



Fig. 1

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 14 of 44 PageID: 17



Fig. 2

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 15 of 44 PageID: 18



Fig. 3

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 16 of 44 PageID: 19



Fig. 4



Fig. 5



Fig. 6

Exhibit B

B



US006196404B1

(12) **United States Patent**
Chen

(10) Patent No.: **US 6,196,404 B1**
(45) Date of Patent: **Mar. 6, 2001**

(54) **TRIPLE SEAL CONTAINER WITH PROTRUSION**

(75) Inventor: **Jeffrey Chen**, Staten Island, NY (US)

(73) Assignee: **Newspring Industrial Corp.**, East Newark, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/483,350**

(22) Filed: **Jan. 14, 2000**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/120,985, filed on Jul. 22, 1998, which is a continuation-in-part of application No. 29/066,299, filed on Feb. 11, 1997, now Pat. No. Des. 415,420, and a continuation-in-part of application No. 29/081,160, filed on Dec. 23, 1997.

(51) Int. Cl.⁷ ........................................ **B65D 41/16**

(52) U.S. Cl. ...................... **220/4.21**; 220/780; 220/781; 220/792; 206/505

(58) Field of Search ................................. 220/4.21, 4.24, 220/780, 781, 782, 783, 790, 792, 796, 797, 798, 801, 802, 305; 206/503, 508, 505, 515, 519

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,798,631 | * | 7/1957 | Engel ............................ 220/266 X |
| 4,124,141 | * | 11/1978 | Armentrout et al. ............... 220/783 |
| 4,555,043 | * | 11/1985 | Bernhardt ........................ 220/783 |
| 4,844,263 | * | 7/1989 | Hadtke ........................... 206/508 |
| 5,377,860 | * | 1/1995 | Littlejohn et al. ............... 220/780 |
| 5,553,701 | * | 9/1996 | Jarecki et al. .................. 220/780 X |
| 5,758,791 | * | 6/1998 | Mangla ........................... 220/780 X |
| 6,056,138 | * | 5/2000 | Chen ............................. 220/4.21 |

* cited by examiner

Primary Examiner—Nathan J. Newhouse
(74) *Attorney, Agent, or Firm*—Gibbons, Del Deo, Dolan, Griffinger & Vecchione

(57) **ABSTRACT**

The present invention is a container for food. The container has a lid and a base which form a series of three self-reinforcing seals when mated. A protrusion on the lid reinforces the triple seal formed between the lid and base. The protrusion applies a force to the base, locking the lid and base together. The third seal has the largest surface area and acts as a first line of defense against food leakage out of the container and a last line of defense against the entry of contaminants into the container.

9 Claims, 6 Drawing Sheets





Fig. 1



Fig. 2



Fig. 3



**Fig. 4**



Fig. 5



Fig. 6

US 6,196,404 B1

1

## TRIPLE SEAL CONTAINER WITH PROTRUSION

### RELATED APPLICATIONS

The present patent application is a continuation-in-part of U.S. patent application Ser. No. 09/120,985 (NIC-3) filed Jul. 22, 1998 and now pending in the United States Patent and Trademark Office, which is a continuation-in-part of U.S. patent application Ser. No. 29/066,299 (NIC-1) filed Feb. 11, 1997 now U.S. Pat. No. D 415,420 and U.S. patent application Ser. No. 29/081,160 (NIC-2) filed Dec. 23, 1997. The applications have common inventors and assignees and are incorporated herein by reference.

### FIELD OF THE INVENTION

This invention generally relates to containers for storing and transporting food, and in particular to a sealing component formed between a base and a rim of a container for storing food.

### BACKGROUND OF THE INVENTION

There are various container assemblies currently used in the "take-out" food industry which are capable of transporting and storing food for a temporary period. It is important that such containers may be sealed to prevent the leakage and/or spoilage of food while in transport or storage. Currently, there are various designs available for such a purpose in the food industry.

An example of such a container consists of a lid and base portion that, upon mating form a seal to prevent leakage and spoilage. These containers are made of various materials including an aluminum base having a cardboard lid and a plastic base with a plastic lid. Specifically, an aluminum base forms a seal with the lid by the folding of the base around the peripheral to grasp the lid. This seal is not effective at preventing the food from leaking out of the container through the seal, especially when liquid is contained within the container. In addition, such containers are inconvenient because the assembly and disassembly proves to be both time consuming and messy.

Containers which consist of a base and lid made of plastic typically have only one or two seals to prevent the flow of food out of the container area and to prevent the introduction of bacteria and air into the container. With such containers, however, food leakage can occur when one or both seals are broken. Typical double seal containers provide two identical seals, one interior to the other. The seals have small surface areas to prevent the flow of food, liquids and/or air. Disadvantageously, the small surface area of the seals results in failure of the seal more often than acceptable. In addition, double seal containers typically have the two seals located right next to each other, so that if food has leaked through one seal, it is highly likely that the food will leak through the other. In other words, the placement of the seals on the currently available containers does not allow the seals to reinforce each other because they are close in proximity.

There are also available certain containers having three seals. Again, as with the double and single seal containers, the surface area of the seals is small and the proximity of the seals is close. Therefore, the likelihood of failure of theses seals is great.

Yet another example of a container currently available in the "take-out" food industry are the traditional Chinese Food take-out containers. These containers are made completely of cardboard. These containers form a seal on top by the

2

folding over of interlocking flaps. This seal is not airtight and thus, leakage is a common occurrence. In addition, food often leaks out of the bottom of such containers because the bottom is composed of one piece of cardboard folded to form the container. Thus, there are gaps in the container, along the folds. In addition, the cardboard of the container weakens easily and is not effective for storing food that may be left over.

Considering the great number of containers in use in the take-out industry, there is a need for a container having a seal which prevents food leakage and spoilage. In addition, there is a need for a container which may be easily and readily assembled and disassembled. In addition, the container must be of such quality such that it is capable of storing foods for some length of time. Yet another desirable feature is for a container that may be easily and compactly stored.

### SUMMARY OF THE INVENTION

The present invention is a triple seal container having a protrusion on the lid which reinforces the triple seal formed between the lid and base. The invention uses a series of three self-reinforcing seals. The protrusion applies a force to the base, locking the lid and base together. The third seal has the largest surface area and acts as a first line of defense against food leakage out of the container and a last line of defense against the entry of contaminants into the container.

The present invention overcomes the disadvantages of the prior art because it is easily assembled and disassembled while having a triple seal reinforced by the protrusion. In addition, such a triple seal is excellent for protecting food while in transport and storing such food in the container for a long period of time. The invention also provides for an area for easy grasping of the container without burning the user's fingers, if the contents of the container are hot.

In an exemplary embodiment of the present invention, the container comprises a base and a lid which, when mated, form three seals, two of which are reinforced by the protrusion. The interior seal has a surface area larger than the middle and exterior seals. The protrusion is located on the lid and urges the base to contact with the lid at such a point, resulting in the reinforcement of the middle and exterior seals.

Advantageously, the use of three seals and a protrusion on the container does not preclude easy assembly of the lid and base. The ability to break the seal, and remove or introduce food to the container, then close all three seals is easily accomplished with the present invention through the application of a small force. The closure involves no more than simple pressure on the lid and the sealing of the exterior or middle seal ensures the closure of the remaining seals.

The container of the present invention are same size stackable, with one base fitting into the base of the next container, and the lids acting in the same fashion. The invention is stackable when in the fully assembled position as well. This dramatically reduces the storage space required to keep large quantities of the invention. The present invention is, therefore, a safe, easy to use container that can be used in the food preparation and distribution industries and in the private home.

### BRIEF DESCRIPTION OF THE DRAWINGS

For a detailed understanding of the present invention, reference should be made to the following detailed description taken in conjunction with the accompanying drawings wherein:

US 6,196,404 B1

3

FIG. 1 is a perspective view of the lid;

FIG. 2 is a side view of the lid;

FIG. 3 is a perspective view of the base;

FIG. 4 is an enlarged view of the seals between the lid and the base;

FIG. 5 is a side view of the fully assembled container including a base and a lid; and

FIG. 6 is an enlarged view of three lids, stacked one on top of the next;

DETAILED DESCRIPTION

FIGS. 1 and 2 show a lid 100 having a substantially planar top portion 110 with a slightly raised, substantially planar region 120 parallel to a top portion 110. A peripheral wall 130 extends substantially vertically downward from the top portion 110. A rim 140 extends substantially horizontally from the peripheral wall 130. An inner edge 150 extends generally perpendicularly upwards from the rim 140. A protrusion 405 (FIG. 4) is attached to the inner edge 150. A middle sealing edge 160 is connected substantially perpendicularly to the inner edge 150. From the middle sealing edge 160, an exterior sealing edge 170 stretches generally downwards. A locking lip 200 protrudes from the exterior sealing edge 170.

Referring now to FIG. 3, a base 300 is illustrated having a substantially planar bottom portion 310, including a slightly raised, substantially planar region 320, that is parallel to bottom portion 310. Connected to the bottom portion 310, is a convex extension surface 330, which runs along the perimeter of base 300. From convex extension surface 330, a perimeter wall 340 extends substantially vertically upwards. The perimeter wall 340 ends in a generally horizontally extending rim 350. Rim 350 is integrally connected to a generally perpendicular upwardly extending inner edge 360. A middle sealing edge 370 extends substantially horizontally from the inner edge 360 and an exterior sealing edge 380 extends substantially vertically downwards from the middle sealing edge 370.

Given the above structure, the interaction between the various lid and base components are now described with respect to FIGS. 4 and 5. FIG. 4 shows an enlarged view of the three seals and FIG. 5 shows a fully assembled container 500. This interaction creates the triple seal formation of the present invention.

Lid 100 is pressed in a downward motion onto base 300. Lid 100 and base 300 are aligned by inner edge 150 and protrusion 405, with locking lip 200 contacting downwardly exterior base sealing edge 380.

Upon the application of downward pressure on the lid 100, locking lip 200 flexes exterior sealing edge 170 outwards. Further downward pressure on the lid 100 pushes the locking lip 200 past the end of base exterior sealing edge 380. Locking lip 200 then moves inwardly with lid exterior sealing edge 170 flexing inwardly to contact exterior base sealing edge 380. Upon the mating of the lid 100 and base 300, a container as shown in FIGS. 4 and 5 is assembled.

In the fully assembled container 500, an interior seal 410 is formed between lid rim 140 and base rim 350, a middle seal 420 is formed between lid middle sealing edge 160 and base middle sealing edge 370, and an exterior seal 430 is formed between lid exterior sealing edge 170 and base exterior sealing edge 380. Upon this mating of the lid 100 and the base 300, the protrusion 405 applies a force to the base inner edge 360. This force, in turn, pushes the base middle sealing edge 370 against the lid middle sealing edge

4

160, reinforcing the middle seal and pushes the base exterior sealing edge 380 against the lid exterior sealing edge 170 reinforcing the exterior seal. In addition, the seals are self-reinforcing because the engagement of any one of the three seals, will urge the engagement of the two remaining seals. Although the container 500 is rectangular in configuration, it may be any variety of shapes, for example, round, square, oval, or oblong.

In addition to acting as seals, the interior seal 410, middle seal 420 and exterior seal 430 are conveniently located on the container 500 so that this area, as a whole may be grasped to carry the container. This proves especially helpful when the contents of the container 500 are hot or when the container 500 is removed from the microwave.

In the exemplary embodiment of the invention, the interior seal 410 is larger than either the exterior seal 430 or the middle seal 420. With the increased surface area, this interior seal 410 acts as a larger first barrier against leakage from the container 500, and a superior final barrier against bacterium and contamination.

Referring now to FIGS. 1 and 6, it can be seen that the lids 100, and bases 300, can be easily stacked in nested columns, lid upon lid and base upon base. The lids 100 are stackable since the locking lip 200 rests directly upon the middle sealing edge 160 of the next lid. The bases are also stackable since the planar bottom portion 310 of one base rests upon the planar bottom portion 310 of the next base. In addition, base rim 350 provides support for the next base rim 350. The stackability of the lids and bases provides a minimal stacking height and minimizes the required storage area. In addition, the top portion 110 and the substantially planar region 120 of the lid 100 is fitted with the bottom portion 320 and the substantially planar region 320 of the base 300 so that the fully assembled container 500 may be stacked securely one on top of the other.

In an alternative embodiment of the present invention, the container may take on an oval, or circular configuration. The critical components of both the lid 100 and base 300 remain substantially identical to those described herein.

While the invention has been described with reference to preferred embodiments, it should be appreciated by those skilled in the art that the invention may be practiced, otherwise than as specifically described herein without departing from the scope of the invention. It is, therefore, to be understood that the scope of the invention be limited only by the appended.

What is claimed is:

1. A container having three seals, comprising:

a base having
  a substantially planar bottom,
  a base perimeter wall extending substantially vertically upward from said bottom,
  a base rim extending substantially horizontally outward from said base perimeter wall, and
  a base sealing edge attached to said base rim; and

a lid having
  to a substantially planar top,
  a lid perimeter wall extending substantially vertically downward from said top,
  a lid rim extending substantially horizontally outward from said lid perimeter wall,
  a lid sealing edge attached to said lid rim,
  a protrusion attached to said lid sealing edge, and
  a locking lip protruding from said sealing edge;

wherein said base sealing edge and said lid sealing edge are molded to be correspondingly mateable to each

US 6,196,404 B1

5

other and upon mating said base sealing edge and said lid sealing edge form a middle seal and an exterior seal and said base rim and said lid rim form an interior seal and further wherein said protrusion pushes said base sealing edge against said lid sealing edge.

2. The container according to claim 1, wherein said interior seal has a surface area greater than said middle seal and said exterior seal.

3. The container according to claim 1, wherein said interior seal has a surface area two times greater than the surface area of said middle seal and three times greater than the surface area of said exterior seal.

4. The container according to claim 1, wherein at least a second base is stackable within said base.

5. The container according to claim 1, wherein at least a second lid is stackable within said lid.

6. The container according to claim 1, wherein at least a second container is stackable on said container.

7. The container according to claim 1, said base sealing edge further comprising:

an inner base edge extending generally vertically upward from said base rim;

a middle base sealing edge extending substantially horizontally outward from said inner base edge; and

an exterior base sealing edge extending substantially vertically downward from said middle base sealing edge; and

said lid sealing edge further comprising:

an inner lid edge extending generally vertically upward from said lid rim, wherein said protrusion is attached to said inner lid edge;

a middle lid sealing edge extending substantially horizontally outward from said inner lid edge; and

an exterior lid sealing edge extending substantially vertically downward from said middle lid sealing edge, said locking lip protruding from said downward exterior lid sealing edge;

wherein upon mating of said bottom and said lid, said protrusion pushes said inner base edge outwards so that said base rim and said lid rim form said interior seal and said middle base sealing edge and said middle lid sealing edge form said middle seal and said exterior base sealing edge and said exterior lip sealing edge form said exterior seal.

8. The container according to claim 7, wherein the engagement of one of said exterior seal, said middle seal or

6

said interior seal urges the engagement of the other two remaining seals.

9. The container having three seals, comprising:

a base having

a substantially planar bottom,

a base perimeter wall extending substantially vertically upward from said bottom,

a base rim extending substantially horizontally from said base perimeter wall, and

a base sealing edge having

an inner base edge extending generally vertically from said base rim,

a middle base sealing edge extending substantially horizontally from said inner base edge, and

an exterior base sealing edge extending substantially vertically from said middle base sealing edge;

a lid having

a substantially planar top,

a lid perimeter wall extending substantially vertically downward from said top,

a lid rim extending substantially horizontally from said lid perimeter wall, and

a lid sealing edge having

an inner lid edge extending generally vertically from said lid rim,

a protrusion attached to said inner lid edge,

a middle lid sealing edge extending substantially horizontally from said inner lid edge, and

an exterior lid sealing edge extending substantially vertically from said middle lid sealing edge, and

a locking lip protruding from said exterior lid sealing edge;

wherein, said base sealing edge and said lid sealing edge are molded to be correspondingly mateable to each other and upon mating of said base and said lid, said base rim and said lid rim form said interior seal, said middle base sealing edge and said middle lid sealing edge form said middle seal and said exterior base sealing edge and said exterior lip sealing edge form said exterior seal, and

wherein, the engagement of one of said exterior seal, said middle seal and said interior seal urges the engagement of the other two remaining seals, and said interior seal has a surface area greater than said middle seal and said exterior seal.

*   *   *   *   *

Exhibit C



**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel :973-481-1318
Fax:973-481-1220



# NEWSPRING INDUSTRIAL CORPORATION
# SALES REPRESENTATION AGREEMENT

THIS SALES REPRESENTATION AGREEMENT, MADE THIS 9th DAY OF __July 1999, between __NEWSPRING INDUSTRIAL CORPORATION, (the "Company"), a corporation with a principal place of business at 900 Passaic Avenue, E. Newark, NJ 07029, and_ Group W., Inc_____, (the "Representative"), a business with a principal place of business at _246 East 131st Street Cleveland, Ohio 44108 .

WHEREAS, the Company is engaged in the design, manufacture, marketing and sales of Injection Molded Plastic Containers and other products used in the Foodservice Industry; and

WHEREAS, Representative has experience and expertise in the marketing, sales and sales service of such products; O'Smile: L-2508, L5008, L-2516, L-5016, L-2524, L-5024, L-2532, L-5032, SD-2516, SD-5016, NL-500. VERSAtainers; NC-718, NC-718-B, NC-723, NC-723-B, NC-729, NC-729-B, NC-948, NC-948-B, NC-818, NC-818-B, NC-838, NC-838-B, NC-868, NC-868-B, NC-888, NC-888-B.

AND WHEREAS, the Company desires to retain Representative to use their expertise to market and sell certain of its products in a designated market; Ohio, West Virginia, and Western Pennsylvania

NOW THEREFORE, the parties agree as follows:

1.  **Appointment**

    1.1  The Company hereby appoints Representative as its sales representative to sell the Product to Accounts in the Territory.

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel :973-481-1318
Fax:973-481-1220



## 2.   Definitions

2.1  As used herein, the term "Territory" shall refer to the following geography:

2.2  As used herein, the term "Accounts" shall refer to equipment, foodservice, janitorial, paper, supply distribution companies and enduser customers within the Territory. Application of the definition of Accounts shall be within the reasonable discretion of Representative. Notwithstanding, Company shall make the final determination as to whether or not a customer is within the definition of Account.

2.3  As used herein, the term "Product" refers to those items sold by Representative under the Company's trademarks and such other items as the parties may mutually agree upon in writing from time to time. Representative reserves the right to delete particular items from the definition of Product on thirty days' written notice.

2.4  As used herein, the term "products" refers to all of the Company's injection molded plastic foodservice products.

2.5  As used herein, the term "Re-Distributor" shall refer to entities that redistribute the Company's products to Accounts.

## 3.  Representative's Responsibilities

3.1  Representative shall maintain a sales office in the Territory and shall use his/her best efforts to promote and encourage sale of Product to Accounts, at prices and on the terms specified by the Company.

3.2  Representative agrees to make no false or misleading statements or omissions of material facts in the sales and marketing of said Product, and agrees to indemnify and hold harmless the Company for loss occasioned to the Company for any such false or misleading statement or omission of material facts.

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel:973-481-1318
Fax:973-481-1220



3.3  Representative shall keep the Company informed as to the general conditions, which pertain to or effect the sale of its products.

3.4  Representative shall not, without the Company's prior written approval, alter, enlarge or limit orders, make representations, warranties or guarantees concerning the Company or the Product or shall change only such prices and terms as the Company may authorize from time to time, and shall have no discretion to vary or deviate from such terms without the explicit permission of the Company.

3.5  Representative shall provide the Company with such credit information on each Account as the Company may require and to procure such additional information which the Company may need from time to time relative to the credit standing of any of its Accounts. Representative shall at all times supply credit data and receive credit approval prior to establishing a new Account.

3.6  Representative shall abide by the policies established by the Company as announced and revised from time to time and it shall be the responsibility of Representative to communicate those policies to the Accounts.

3.7  Except as specifically provided herein, Representative shall bear all of its own expenses incurred in performance of its obligations hereunder.

3.8  Representative's performance hereunder shall comply with all applicable federal, state and local laws, rules, regulations and ordinances.

## 4. Compensation

4.1  The Company agrees to pay and Representative agrees to accept as full compensation hereunder a commission of __5%__ of the Product sold by Representative and shipped to Accounts in the Territory. Alternatively, the Company agrees to pay __3%__ of the Product sold by Representative and shipped to ReDistributors located in the Territory. The commission rate specified in this paragraph cannot be changed unless mutually agreed upon in writing.

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel:973-481-1318
Fax:973-481-1220



4.2 The Company shall maintain an accurate set of books and records' regarding compensation due. Copies of all acknowledgements, invoices, quotes and other correspondence pertaining to the Accounts will be forwarded to Representative within seven (7) business days of generating it.

4.3 The Company shall send to Representative compensation statements containing accurate purchase order numbers, shipping dates, customer names and addresses, invoice numbers and invoice dollar amounts immediately on or before the 15th day of the month following payment of the Product. Compensation shall be paid to Representative on or before the_____day of the month following payment for the product. Representative shall assist in the collection of delinquent Accounts, but shall not be responsible for the payment of such Accounts.

4.4 The Company shall deduct from Representative's compensation, commissions which may have previously been paid erroneously on sales of Product which have since been returned by the customer for which an allowance has been granted for defective or returned goods credited to the customer.

4.5 At the termination of this Agreement, a final accounting shall be made between the parties. No Commissions will be paid on shipments made or invoices issued after termination of this Agreement, provided however that commissions and fees, if any, shall continue to be paid during the thirty day notice period prior to termination, provided however that payment shall not be made until after the Account has paid the Company.

5. **ReDistributors Located Outside the Territory**

5.1 Representative acknowledges that the Company does not have authority or control over ReDistributors' customer lists, customer pricing, target markets of re-distribution, promotional programs, marketing and sales strategies and long-term plans, and that the Company has no duty to disclose such information, if known, to Representative.

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel:973-481-1318
Fax:973-481-1220



Representative agrees to hold harmless the Company for Products sold by ReDistributors located outside the Territory and shipped to Accounts in the Territory.

5.2   The Company shall not pay any commission to Representative of the product sold by ReDistributors located outside the Territory and shipped to Accounts in the Territory

## 6.  Company's Responsibilities

6.1   The Company shall furnish Representative, at no expense to Representative, strategic direction, training, leadership, sales service resource, product knowledge, catalogs, promotional literature, point of sale materials and other material necessary for the proper promotion and sale of Product in the Territory.

6.2   Except as specifically provided in clause, provision 5.1, the Company shall provide Representative with the names of all persons and companies within its Territory requesting information on the Company's products, together with general correspondence, quotes, supply, price and timely delivery information.

## 7.  Independent Contractor

7.1   Representative acknowledges that his/her relationship with the Company is that of an independent contractor.  With respect to the services covered by this Agreement, Representative will not be treated as an employee of the Company for purposes of the Federal Unemployment Tax Act, Federal and state income tax withholding, state unemployment taxes, state workmen's compensation insurance and similar laws conveying the employer-employee relationship.

7.2   Representative shall be responsible for payment and/or withholding of all applicable taxes on amounts paid to Representative.

## 8.   Confidential Information

8.1   Representative acknowledges that the performance by Representative of the services required of him/her hereunder will result in Representative coming into possession of

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel:973-481-1318
Fax:973-481-1220



confidential information including customer lists, confidential customer information, pricing, promotional programs, marketing and sales strategies and long-term plans, the disclosure of which could put the Company at a competitive disadvantage. Representative agrees that he/she will not during the term of this Agreement and for a period of three (3) years thereafter, directly or indirectly, utilize any such confidential information, trade secrets, customer information, technical data or know-how relating to the Product and other products, processes, shipments, methods, equipment or business practices of the Company or related entities which Representative may acquire, or to which Representative may have access during the performance of his/her services under this Agreement. This obligation of confidentiality shall not apply to (a) information generally available to the public; (b) information previously in possession of Representative as evidence by written record; and (c) information disclosed to Representative by a third party under no obligation to the Company. This obligation of confidentiality is a material part of the consideration for this Agreement.

## 9.   Terms of Agreement and Conditions of Termination

9.1   This Agreement is effective on _____June 15, 1999_   and   shall   continue   unless terminated by either the Company or Representative upon_30_ days written notice to the other party.

## 10.   Assignment

10.1   Representative may not assign this Agreement, nor shall Representative delegate performance of these duties under this Agreement without the prior written approval of the Company.

## 11.   Entire Agreement

11.1   This Agreement forms the entire understanding between the parties. It cancels and supercedes all prior agreements and understandings. There shall be no change or

**Newspring**
**Industrial Corp.**
900 Passaic Avenue
E. Newark, NJ 07029
Tel:973-481-1318
Fax:973-481-1220



modification of any of the terms in this Agreement unless it is reduced to writing and signed by both parties.

## 12. Applicable Law

12.1   This Agreement shall be governed for all purposes by the law of the State of New Jersey, without giving effect to its conflict of law provision.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed and delivered by its officer duly authorized and the Representative has executed and delivered this Agreement, as of the date first above written.

Group W, Inc.
ATTEST:BY:_____

Title:_____

NEWSPRING INDUSTRIAL CORP.
ATTEST:BY:_____

Title:_____*Vice President*_____

Exhibit D

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 38 of 44 PageID: 41





Group W Territory

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 39 of 44 PageID: 42




































Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 40 of 44 PageID: 43

Group W Territory



Group W Territory



Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 43 of 44 PageID: 46

Group W Territory

Case 2:06-cv-00343-JAG-MCA   Document 1   Filed 01/23/06   Page 44 of 44 PageID: 47

Group W Territory

